

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
TARRANT DIVISION

| | | |
|---|---|---|
| MICHELLE JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00695 |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Michelle Jackson, and files this *First Amended Complaint and Jury Demand*. In support thereof, Plaintiff would respectfully show the Court as follows:

### I.

### PARTIES

1. Plaintiff Michelle Jackson ("Jackson" or "Plaintiff") is an individual who resides in Fort Worth, Tarrant County, Texas.

2. Defendant BNSF Railway Company ("BNSF" or "Defendant") is a corporation organized under Delaware law, with its principal office in Fort Worth, Tarrant County, Texas.

### II.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action for Defendant's violation of the Family and Medical Leave Act (FMLA), as this Court has original jurisdiction based on a claim or right arising under federal law. 28 U.S.C. § 1331. Venue is proper in the United States

District Court for the Northern District of Texas, Tarrant Division, because the unlawful practices alleged below were committed therein.

## III.

## FACTS

4. Plaintiff was a 14-year employee of BNSF. She started with the railway in 2002, and intended to be with the railway until she retired.

5. Jackson was a top performer. She rose through the ranks of BNSF, until her latest promotion to Senior Market Manager in October 2015. Jackson continued to deliver in this role as well, negotiating and closing a three-year, $12M contract just one month into the role.

6. Unfortunately, at the time she was promoted she learned that her new supervisor, Carrie Whitman ("Whitman"), favored a different candidate for the position. Jackson chose not to focus on this; she relocated from California to Fort Worth, looking forward to proving herself to Whitman and doing a great job for BNSF. Whitman, however, had other plans. Whereas other market managers were assigned responsibility for one or two commodities, at the time Jackson was terminated she was responsible for six – salt, clay, talc, sodium compounds, cullett, and soda ash.[1]

7. Jackson told Whitman in March that she was overwhelmed with work, but Whitman did not redistribute the work, or otherwise try to remedy the situation. Jackson, a healthy and happy person who was used to performing well, began to experience severe depression for the first time in her life.

---

[1] Jackson was told she would only be responsible for two commodities when she accepted the role. This was increased to six in early February.

8. On April 25, Whitman presented Jackson with a performance improvement plan. The "plan" was of three months' duration, and offered very little in the way of concrete actions Jackson could take to bring her performance up to par. Jackson was already doing everything specified in the plan, but was falling short because the volume of work was unmanageable. Jackson, who had never received anything approaching a performance improvement plan in her professional life, experienced a worsening of the symptoms associated with depression.[2]

9. On May 2, Jackson experienced a health crisis at work and left. She immediately called BNSF's Employee Assistance Program (EAP) and spoke with a counselor named Nicole. Nicole referred Jackson to Texas Health Resources for assessment, where Jackson was diagnosed with depression. Jackson advised Nicole of the diagnosis, and Nicole directed Jackson to send an email to Human Resources Director Kelli Courreges ("Courreges") letting her know that she was under a doctor's care, and that Met Life would be in touch regarding Jackson's disability leave. Jackson did so, and at that point it was made clear to BNSF that Jackson's FMLA rights were triggered, as she suffered from a "serious health condition" within the meaning of the statute and would miss work because of it. Jackson began intense treatment[3] for manic depression that week.

10. On Friday, May 13, while Jackson was in treatment, she received a voicemail from Courreges. In the voicemail, Courreges indicated that she was investigating Jackson's attendance at a concert on May 9, while on short term disability leave. Courreges asked if Jackson could meet she and Whitman at a Starbucks offsite so that Courreges could ask

---

[2] Jackson had not yet seen a doctor or received a diagnosis at this point – she was experiencing symptoms associated with depression but did not recognize them as depression.

[3] Jackson attends treatment 4 ½ hours a day, 5 days a week.

her some questions about that. Obviously, there was no prohibition on Jackson attending a concert after work hours while being on a medical leave of absence for depression. She attended the concert in BNSF's suite, with tickets furnished by BNSF; there was nothing to "investigate" and assuming that this was the true purpose of the meeting, it amounted to pure harassment.

11. Most importantly, however, Jackson had absolutely no duty to meet with Courreges and Whitman to submit to an investigation while she was on FMLA leave, and asking her to do so was a direct violation of the FMLA. Jackson immediately contacted Nicole for guidance. Nicole told Jackson that she had no obligation to meet with Courreges or Whitman while she was on leave, and that she should send Courreges an email letting her know that she would meet with her once she was released from her doctor's care. Jackson sent Courreges an email early the next business day Monday, May 16, in which she stated that she could not meet because she had not yet been released by her doctor, but that she would be more than happy to answer any questions Courreges had once she was released to return to work.

12. BNSF responded by terminating Jackson two days later, for (1) poor work performance resulting in a performance improvement plan, (2) her attendance at a concert while on medical leave, and (3) her refusal to communicate with BNSF when requested to explain her attendance at this concert. In other words, BNSF terminated Jackson for performance which had previously been addressed with a performance improvement plan that would not expire until July 25, for doing something that would have been perfectly acceptable (and even company-sanctioned) had she not been on medical leave, and for not performing job duties while on FMLA leave. Assuming for the sake of argument that BNSF could

lawfully terminate Jackson for not responding to Courreges while on FMLA leave (which it cannot) it is clear that Jackson *did* communicate with BNSF two full days before she was terminated, purportedly for failing to do so.

13. Notably, after Jackson was terminated, her commodities were distributed among several employees, rather than tasking another employee with achieving the impossible.

## IV.

## CAUSES OF ACTION

### Count One – Family and Medical Leave Act – Interference

14. Jackson incorporates paragraphs 4 through 13 as though fully set forth herein.

15. Jackson has satisfied all jurisdictional prerequisites in connection with her claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq.*

16. BNSF is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

17. During the time that Jackson was employed by BNSF, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

18. While Jackson was employed by BNSF, she had a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

19. Jackson was entitled to medical leave to receive treatment for her serious health conditions as provided for in 29 U.S.C. § 2612(a)(1)(C).

20. BNSF interfered with Jackson's rights under the FMLA by terminating her employment shortly into her FMLA leave.

21. As a result of BNSF's violations of the FMLA, Jackson suffered actual damages in the form of lost wages and benefits.

22. As a result of this willful violation of the FMLA, Jackson is entitled to all damages outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of BNSF's violations of the FMLA, plus interest. In addition, Jackson is entitled to liquidated damages equal to the amount of reimbursable compensation described above. Jackson also seeks any additional equitable relief to which she is entitled, along with her reasonable attorney's fees and court costs.

### Count Two – Family and Medical Leave Act – Retaliation

23. Jackson incorporates paragraphs 4 through 13 as though fully set forth herein.

24. The FMLA also prohibits retaliation for availing oneself of her rights under the FMLA.

25. Plaintiff must show that she was protected under the FMLA, she suffered an adverse employment action, and that a causal link exists between the protected activity and the adverse action.

26. In this case, as set forth above, Jackson was protected under the FMLA. BNSF terminated Jackson's employment shortly after she availed herself of her rights under the Act.

## V.

## PRAYER

27. Jackson respectfully requests that this Court grant the following relief from Defendant:

   A. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful under Counts 1 and 2;

   B. Back pay, front pay, pension benefits, retirement benefits, stock options, bonuses, health benefits, and any other relief necessary to compensate Plaintiff pursuant to Counts 1 and 2;

   C. Liquidated damages pursuant to Counts 1 and 2;

   D. Prejudgment and post-judgment interest, pursuant to Counts 1 and 2;

   E. Attorney's fees necessary for prosecution of Counts 1 and 2;

F. Costs for the prosecution of Counts 1 and 2, including the costs of expert witness fees; and

G. Such other general relief to which Plaintiff shows herself justly entitled.

## VI.

## JURY DEMAND

28. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination. She has paid the jury fee.

Respectfully Submitted,

By: /s/ Amanda L. Reichek
Amanda L. Reichek
State Bar No. 24041762
Kyla Gail Cole
State Bar No. 24033113

**Cole | Reichek, PLLC**
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219
214.599.8311 (Telephone)
214.580.9680 (Facsimile)
Amanda@colereicheklaw.com
Kyla@colereicheklaw.com

**Counsel for Plaintiff**

## Certificate of Service

The undersigned hereby certifies that on August 30, 2016, a true and correct copy of the foregoing was served on counsel for Defendant by email, as follows:

c/o   Bryan P. Neal, Esq.
      Katy A. Mathews, Esq.
      Thompson & Knight, LLP
      1722 Routh Street, Suite 1500
      Dallas, Texas 75201
      Bryan.neal@tklaw.com
      Katy.mathews@tklaw.com

                                  Amanda L. Reichek