IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | § | |
|---|---|---|
| MICHELLE JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:16-CV-695-A |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER[1]

Came on for consideration the motion of plaintiff, Michelle Jackson, for partial summary judgment, and the motion of defendant, BNSF Railway Company, for summary judgment. The court, having considered the motions, the responses, the replies[2], the record, the summary judgment evidence, and applicable authorities, finds that plaintiff's motion should be denied and that defendant's motion should be granted.

---

[1] This memorandum opinion and order replaces in its entirety the court's memorandum opinion and order signed July 28, 2017, which the court has, by separate order, vacated and set aside.

[2] Along with her reply in support of her motion for summary judgment, on July 26, 2017, plaintiff filed objections to certain evidence submitted in support of defendant's motion for summary judgment. The objections come too late, as the time for plaintiff's response to defendant's motion has long passed. In her reply in support of her own motion for summary judgment, plaintiff objects to the same evidence relied upon by defendant in response to the motion. In any event, the court typically does not strike summary judgment evidence but gives it whatever weight it may deserve.

I.

Plaintiff's Claims

Plaintiff's operative pleading is her second amended complaint filed April 10, 2017. Doc.[3] 18. In it, she alleges that she was terminated as an employee by defendant in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA"). She asserts two causes of action, one for interference with her FMLA leave and one for retaliation for her use of FMLA leave. Plaintiff also asserts a claim for discrimination under the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051(1) ("TCHRA").[4]

II.

Grounds of the Motions

Defendant seeks judgment on each of plaintiff's claims. As to the interference claim, defendant says that plaintiff cannot show that she was denied benefits to which she was entitled. Specifically, defendant maintains that discharging plaintiff for abusing her medical leave does not constitute interference as a matter of law and neither does asking plaintiff about her attendance at a concert or otherwise communicating with her while

---

[3]The "Doc. __" reference is to the number of the item on the docket in this action.

[4]On June 22, 2017, plaintiff filed a notice of dismissal of her third cause of action, asserted under the Texas Commission on Human Rights Act for failure to accommodate. Doc. 22.

she was on leave. As for the retaliation claim, defendant says that plaintiff cannot prevail because defendant discharged her for legitimate, non-retaliatory reasons. As for the discrimination claim under the TCHRA, defendant says that plaintiff cannot prevail because defendant did not know that plaintiff either had an actual disability or covered impairment and defendant did not take any action motivated by her alleged disability.

Plaintiff seeks judgment only as to the first of her claims. She maintains that defendant interfered with her rights under the FMLA by terminating her employment shortly into her FMLA leave for insupportable and unlawful reasons. Doc. 32 at 1, ¶ 2.

III.

Applicable Summary Judgment Standards

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence

of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of

law.[5] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The undisputed summary judgment evidence establishes the following:

Plaintiff began working for defendant in 2002. In late 2015, she accepted a position as marketing manager, relocating from California to Fort Worth, Texas. Her duties as marketing manager included learning her assigned markets, the competitive factors within the markets, the relevant drivers, risks, opportunities, barriers, and players within the markets, establishing the pricing to ship her assigned commodities on the railroad, and developing marketing strategy for her commodities. Doc. 39 at 298-99; Doc. 29 at 49-50. Plaintiff reported to Carrie Whitman, Director Marketing, Industrial Products. Plaintiff initially had

---

[5]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

responsibility for two commodities.[6] Doc. 39 at 235. At some point, she added four sub-forecast groups, which did not involve many customers or require interaction more than once a year. Doc. 39 at 302.

Plaintiff struggled with the volume of work. Doc. 38 at 2. She recognized that she was faltering and felt overwhelmed. Doc. 38 at 3. By email sent March 24, 2016, Whitman suggested to plaintiff that she limit her travel and time away from the office until she got proficient at processing her rate requests. Doc. 39 at 96. Plaintiff responded, "That would be perfect!" noting that she had just not been able to keep up. Id. In April 2016, Whitman put plaintiff on a performance improvement plan ("PIP"). Doc. 29 at 15-16; Doc. 39 at 197-98. The PIP was presented to plaintiff at a meeting on April 25, 2016, attended by plaintiff, Whitman, Kelli Courreges, Director Human Resources ("Courreges"), and Denis Smith, who was Whitman's supervisor. Doc. 29 at 20, 54-55, 134. Plaintiff was surprised; she did not receive the PIP well; and, she disagreed with being given the PIP. Doc. 29 at 55. She did recognize that she was unable to keep up with the workload

---

[6] The number of commodities assigned to a market manager did not necessarily correlate to the work required. Doc. 29 at 52; Doc. 39 at 302-03. For example, the sand account covered a "500-million-plus market" with lots of need for reporting to executive level, lots of rate requests, and lots of facilities being built. Doc. 39 at 303.

and that her performance could be described as deficient. Doc. 29 at 55-56.

On May 2, 2016, plaintiff experienced a breakdown. Doc. 38 at 3. She called the Employee Assistance Program hotline and was referred to Texas Health Resources for an assessment. Doc. 29 at 66-67. She took off the rest of the day, sending an email to Whitman and Courreges saying that she was not well and had a 2 p.m. appointment to see a doctor. Doc. 29 at 116. Whitman responded, "So sorry to hear that! Take care!" Id. Later in the day, plaintiff sent an email to Courreges saying that she had seen a doctor and was "not well to return back to work" and that MetLife would be forwarding proper documentation for her to be off on short-term disability. Doc. 29 at 117. She did not have a return date. Id.

On May 3, 2016, Courreges forwarded to plaintiff an email regarding delinquent charges on her company credit card that could impact her credit. Doc. 29 at 119-20. Plaintiff responded that she had taken care of a missing receipt the previous day. Id. at 119. On May 4, 2016, Whitman emailed plaintiff to say that she was sorry to hear plaintiff was not well and to inquire whether plaintiff had left an out of office response redirecting her emails. Doc. 29 at 121. On May 6, Whitman emailed again to ask about the out of office response. Doc. 29 at 122. Plaintiff

did not respond and ultimately Whitman had to set up the out of office message. Doc. 29 at 26-27; 85-86.

On May 9, plaintiff attended a Beyonce concert in defendant's suite at AT&T Stadium. Doc. 29 at 86. Another employee who saw her there questioned Whitman about plaintiff's attendance, saying that he had thought plaintiff was out sick. Doc. 29 at 21. Whitman was concerned and told Courreges. Doc. 29 at 22. Finding out that plaintiff had attended the concert in defendant's luxury suite while she was out on leave raised a red flag to Courreges.[7] Doc. 29 at 166. She believed that plaintiff was abusing her FMLA leave. Doc. 29 at 165-66. Courreges wanted to discuss with plaintiff why plaintiff thought it was appropriate to attend the concert when she was not working. Doc. 29 at 167.1-68; 171-73. Courreges believed that plaintiff was taking leave to avoid her PIP. Doc. 29 at 169. Adding to her suspicion was that plaintiff had not been in touch with Whitman or her team for almost two weeks. Doc. 29 at 185-86.

Courreges tried to set up a meeting with plaintiff by leaving her a voicemail on May 13, 2016. Doc. 29 at 123. On May 16, 2016, plaintiff responded by email that she had not been released by her doctor to meet and that as soon as she was, she

---

[7] As Courreges said in an email to the president of human resources, "I don't understand how you can't work but can go to a concert." Doc. 29 at 203.

would be happy to meet and answer questions at that time. Doc. 29 at 124. Courreges replied to the email saying that she needed to talk to plaintiff by the close of business that day, May 16, and that plaintiff could be terminated for failing to communicate with Courreges. Doc. 29 at 125. Plaintiff did not respond. By letter dated May 18, 2016, plaintiff's employment was terminated, giving as the primary reasons her poor work performance, her attendance at the concert while being off work, and her refusal to communicate when requested to explain her attendance at the concert. Doc. 29 at 126.

From the time plaintiff took leave, neither Whitman or Courreges ever had an understanding or suspicion about what the condition was that necessitated the leave. Doc. 29 at 23-24; Doc. 39 at 278. Whitman did not make the decision to terminate plaintiff. Doc. 29 at 23. The decision belonged to Courreges. Doc. 39 at 288. Plaintiff does not know if Whitman or Courreges had any knowledge of her medical diagnosis at the time the termination letter was sent. Doc. 29 at 98. Other than the two emails she sent on May 2, 2016, plaintiff never communicated with Whitman or Courreges about her medical condition. Doc. 29 at 74-76.

V.

Analysis

A. <u>Interference with FMLA Rights</u>

In the first count of her complaint, plaintiff says that defendant interfered with the exercise of her rights under the FMLA by terminating her employment shortly into her FMLA leave.[8] Doc. 18 at 6, ¶ 22. To establish an FMLA interference claim, plaintiff must show that defendant interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights and that the violation prejudiced her. <u>Acker v. Gen. Motors, L.L.C.</u>, 853 F.3d 784, 788 (5th Cir. 2017). An interference claim merely requires proof that defendant denied plaintiff her entitlements under the FMLA. <u>Id.</u>

The parties do not dispute that plaintiff was an eligible employee, that defendant was subject to the FMLA's requirements, or that plaintiff gave notice of her intention to take FMLA leave. They do dispute whether plaintiff was entitled to FMLA leave and whether defendant denied plaintiff FMLA benefits to which she was entitled. <u>See</u> <u>Lanier v. Univ. of Tex. Sw. Med.</u>

---

[8]This is the same claim asserted in count two, but with a different name, retaliation. For this reason, the court agrees with defendant that these claims are better treated as one retaliation claim. Kendall v. Walgreen Co., No. A-12-CV-847-AWA, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014); Varise v. H&E Healthcare, L.L.C., No. 10-666-BAJ-DLD, 2012 WL 5997202, at *3-4 (M.D. La. Nov. 30, 2012). Nevertheless, the court will discuss them separately.

10

Ctr., 527 F. App'x 312, 316 (5th Cir. 2013)(discussing elements of interference cause of action).

Plaintiff argues that discriminatory intent plays no role in determining an interference claim, relying on a concurring opinion in Cuellar v. Keppel Amfels, LLC, 731 F.3d 342, 349 (5th Cir. 2013). Doc. 38 at 9. Defendant argues that plaintiff cannot recover under any FMLA theory if she cannot show that defendant's reason for terminating her was a discriminatory one. Miller v. Metrocare Servs., 809 F.3d 827, 832 (5th Cir. 2016); Grubb v. Sw. Airlines, 296 F. App'x 383, 391 (5th Cir. 2008).

As the Fifth Circuit has noted, an employee who requests or takes leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave. Grubb, 296 F. App'x at 391. And, an otherwise proper termination precludes entitlement to leave. Id. Here, the summary judgment evidence is that defendant suspected plaintiff of committing fraud, that is, claiming a benefit to which she was not entitled. Defendant attempted to investigate, but plaintiff refused to cooperate, leading to her termination.[9] Defendant's honest suspicion of abuse is sufficient to defeat plaintiff's substantive FMLA rights. Wesley v. One Price Clothing Stores,

---

[9] Defendant had a right to investigate its suspicion and doing so did not violate the FMLA. Smith-Schrenk v. Genon Energy Servs., L.L.C., No. H-13-2902, 2015 WL 150727, at *9 (S.D. Tex. Jan. 12, 2015). See Callison v. City of Philadelphia, 430 F.3d 117 (3d Cir. 2005).

11

Inc., No. 4:02-CV-834-A, 2003 WL 21955861, at *3 (N.D. Tex. Aug. 15, 2003). See Scruggs v. Carrier Corp., 688 F.3d 821, 825-26 (7th Cir. 2012); Warwas v. City of Plainfield, 489 F. App'x 585, 588 (3d Cir. 2012). Once plaintiff was properly terminated, she was no longer eligible for FMLA benefits and there could not have been any interference.

B. Retaliation for Exercise of FMLA Rights

In the second count of her complaint, plaintiff says that defendant retaliated against her for the exercise of her rights under the FMLA by terminating her employment shortly after she availed herself of those rights. Doc. 18, at 7, ¶ 28. The Fifth Circuit uses the McDonnell Douglas framework to analyze retaliation claims under the FMLA. Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999). To make a prima facie case of retaliation, plaintiff must show that she was protected under the FMLA; she suffered an adverse employment action; and, she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. Acker, 853 F.3d at 790. The third element requires plaintiff to show a causal link between the protected activity and the adverse action. Id. If plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason

12

for her discharge. <u>Powers v. Woodlands Religious Cmty. Inc.</u>, 323 F. App'x 300, 302 (5th Cir. 2009). If defendant carries its burden, plaintiff must produce substantial evidence to show that the proffered reason was not the true reason for the employment decision and that the real reason was plaintiff's taking of FMLA leave. <u>Chaffin</u>, 179 F.3d at 320.

Here, for summary judgment purposes, defendant assumes that plaintiff can make out a <u>prima facie</u> case. Doc. 28 at 31. It argues that plaintiff cannot show that its reason for discharging plaintiff was not the true reason and that retaliation was. As recited, <u>supra</u>, Courreges, who made the decision to terminate plaintiff, testified that she believed that plaintiff was abusing her medical leave because plaintiff took leave shortly after receiving a PIP; within days, plaintiff attended the Beyonce concert in defendant's luxury suite; and, plaintiff refused to discuss her reasons for attending the concert when she claimed to be too ill to work. Even if Courreges was incorrect in her assessment, her belief constitutes a legitimate, nondiscriminatory reason for the termination. <u>Woodson v. Scott & White Mem'l Hosp.</u>, 255 F. App'x 17, 20 (5th Cir. 2007); <u>Williams v. Lyondell-Citgo Refining Co., Ltd.</u>, 247 F. App'x 466, 471 (5th Cir. 2007). Plaintiff has not come forward with summary judgment evidence to show that this was pretext for retaliation. <u>See</u>

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219-20 (5th Cir. 2001).

C. TCHRA Disability Claim

Plaintiff recognizes that the causation standard for a TCHRA claim is the same as that for an FMLA retailation claim, i.e., plaintiff must show that her claimed disability was a motivating factor in her discharge. Doc. 38 at 33. As discussed, supra, the summary judgment evidence establishes that Courreges did not believe, much less perceive, that plaintiff suffered from a disability; nor did she terminate plaintiff based on any disability or perceived impairment. Rather, defendant had a legitimate, nondiscriminatory reason for terminating plaintiff and plaintiff has failed to come forward with summary judgment evidence to show that such reason was pretext for discrimination.

VI.

Order

The court ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, denied; that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on her claims against defendant; and, that plaintiff's

14

claims be, and are hereby, dismissed.

SIGNED August 1, 2017.

_____
JOHN McBRYDE
United States District Judge